DIANE L. WELCH, ESQ.
Nevada Bar No. 11738
COLLEGE OF SOUTHERN NEVADA
OFFICE OF GENERAL COUNSEL
6375 W. Charleston Ave., #W32E
Las Vegas, Nevada  89146
Telephone:  (702) 651-7488
Facsimile:  (702) 651-7464
*Attorney for Defendants*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| JOYCE ZAIC, | Case No. 2:14-cv-00892-RFB-PAL |
| Plaintiff, | |
| vs. | |
| MICHAEL GIDDENS, an individual, T. WALL, an individual, and Defendant John Does 1 through 5, | **MOTION TO DISMISS** |
| Defendants. | |

COME NOW, Defendant Peace Officers MICHAEL GIDDENS and TIMOTHY WALL, by and through counsel, DIANE L. WELCH, Assistant General Counsel for the College of Southern Nevada ("CSN"), and hereby move for dismissal of Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6), the attached points and authorities, the papers and pleadings on file herein, and any oral argument this Court may allow.

### **MEMORANDUM OF POINTS AND AUTHORITIES**

### **I.  INTRODUCTION**

As an initial matter, Plaintiff's Complaint fails to state a claim because the statute she cites as governing the Defendant Officer's jurisdiction and authority does not apply to these Defendants.  The authority of these Police Officers is at the heart of Plaintiff's claims, and the result is that her Complaint fails as a matter of law because it is predicated on an inapplicable statute.  Second, Plaintiff states no facts to show a violation of her Constitutional rights

resulting from her arrest pursuant to the properly issued bench warrant. Finally, even if the Court were to find some violation, Defendants are entitled to qualified immunity, because the law did not clearly establish that it would be unlawful to arrest Zaic under the circumstances presented in this case.

## II. STATEMENT OF FACTS

The College of Southern Nevada ("CSN") is an institution within the Nevada System of Higher Education ("NSHE"). Under Nev. Rev. Stat. 396.325, CSN is authorized to create a police department and also enter into interlocal agreements with other law enforcement agencies to "provide for the rendering of mutual aid." The CSN Police Department (CSNPD) has such an agreement with the Las Vegas Metropolitan Police Department (LVMPD). (Attached as Ex.1)[1] Defendant Officers are Category I POST-certified peace officers employed by the CSNPD.

Plaintiff Zaic filed her Complaint on June 8, 2014, the last possible date under the applicable statute of limitations. In her Complaint, she cites alleged violations of her Fourth and Fourteenth Amendment rights under the U.S. Constitution, including allegations of unlawful arrest, forcible entry, destruction of personal property, and abuse by Defendant Officers while acting under color of law in violation of 42 U.S.C. § 1983. (Complaint, Dkt. #1) The underlying incident occurred on June 8, 2012. Defendant Officers arrested Zaic at her home pursuant to an arrest warrant issued by the Las Vegas Justice Court on May 31, 2012. (Warrant attached as Ex. 2)[2]

Months prior to the issuance of the arrest warrant, Plaintiff Zaic persisted with an ongoing dispute with CSN regarding denial of a refund for a college class. (Dkt. #1, ¶¶ 9-12) After CSN

---

[1] Defendants request the Court take judicial notice of Ex. 1, the Interlocal Agreement between LVMPD and CSNPD. As an Agreement by and between public entities, this document constitutes a public record under Nev. Rev. Stat., Ch. 239 "Public Records." The Court may take judicial notice of matters of public record outside the pleadings without converting a motion to dismiss to a motion for summary judgment. MGIC Indem. Corp. v. Weisman, 803 F.2d 500, 504 (9th Cir. 1986).

[2] Defendants request the Court take judicial notice of Ex. 2, the Bench Warrant issued by the Las Vegas Justice Court on May 31, 2012, based on the legal authority cited in FN 1. As a court record, the warrant constitutes a public record. Further, the warrant is referenced and incorporated in Plaintiff's Complaint (Dkt. #1, ¶ 25), and is a document integral to her claims.

Office of General Counsel
College of Southern Nevada
6375 W. Charleston Ave., Sort Code W32E
Las Vegas, NV 89146

denied her the relief she sought, Zaic posted on the Internet defamatory statements about NSHE personnel and threatened physical violence. Additionally, she made direct contact with NSHE and CSN staff by telephone and subjected staff members to profanity and racial slurs during these telephone conversations. Due to this harassment, threats and offensive conduct, CSN obtained a Temporary Restraining Order for Protection Against Harassment in the Workplace ("TPO") issued on February 7, 2012 by Judge Lippis, Dept. 9, of the Las Vegas Justice Court. (Dkt. #1, ¶¶13-15)  The hearing to extend the TPO into a permanent restraining order was set for February 23, 2012. (Dkt. #1, ¶ 14)   Zaic was served with the Order Setting Hearing on February 15, 2012, by Defendant Officer Wall. (Dkt. #1, ¶ 15)

On March 9, 2012, the court issued the Extended Protective Order ("PO") with an expiration date of February 23, 2013. (Dkt. #1, ¶ 17) CSN filed a motion to amend the PO on March 29, 2012, which the Court granted on April 11, 2012.  The first page of the PO from the Court gave Plaintiff notice that:  *"If you disobey this Order, you may be arrested and prosecuted for the crime of violating an Order for Protection Against Harassment in the Workplace and any other crime that you may have committed in disobeying this Order."* (Extended Protective Order, attached as Ex. 3)[3]

Zaic failed to obey the PO, and CSN moved for enforcement.  (Dkt. #1, ¶¶ 21, 22)  The court set a hearing date of May 23, 2012 for the Motion for Enforcement and ordered Zaic to appear in court on that date. (Dkt. #1, ¶ 22)  The LVMPD attempted five times to serve the order to appear, but each time Plaintiff evaded service.  (Return of Service, Ex. 4)[4]  Defendant Officer Giddens served Plaintiff with the order to appear on May 15, 2012, but Zaic failed to attend the hearing.  (Dkt. #1, ¶ 24)  Judge Lippis then issued a Bench Warrant for Plaintiff's arrest on May 31, 2012.  (Dkt. #1, ¶ 25; Ex. 2)  Defendant Officers Giddens and Wall were notified of the arrest warrant by their supervisors and directed to execute the warrant.  (Wall

---

[3] Defendants request the Court take judicial notice of Ex. 3, Extended Order for Protection issued by the Las Vegas Justice Court, under the authority cited in FN 1.  As a court record, the Protective Order constitutes a public record.  Further, the Protective Order is referenced and incorporated in Plaintiff's Complaint (Dkt. #1, ¶¶ 17-21), and is a document integral to her claims.

[4] Defendants request the Court take judicial notice of Ex. 4, Return of Service signed by LVMPD Officer Thomas Cantu and filed with the Las Vegas Justice Court on May 18, 2012, under the authority cited in FN 1.

Office of General Counsel
College of Southern Nevada
6375 W. Charleston Ave., Sort Code W32E
Las Vegas, NV 89146

Aff., Ex. 5 ¶4)[5]  After verifying the bench warrant in the NCIC electronic system on June 7, 2012, they proceeded to Plaintiff's residence to attempt arrest. (Ex. 5, ¶4)  They were unsuccessful in locating Zaic at her residence.  On June 7, 2012, Defendants made contact with LVMPD who had officers also watching Plaintiff's residence and attempting to arrest her.  In fact, LVMPD officers had attempted to arrest Plaintiff unsuccessfully on four separate occasions between June 6-8, 2012.  ("Not Found" Aff. filed with the Las Vegas Justice Court and attached as Ex. 6)[6]

Prior to proceeding to Plaintiff's residence on June 8, 2012, Defendant Officers contacted Clark County Deputy District Attorney Scott Mitchell ("Mitchell") to discuss Zaic's attempts to evade arrest and determine how the officers should proceed; specifically, whether they could lawfully enter her residence once determined she was inside.  Mitchell informed Defendants that pursuant to Nev. Rev. Stat. 171.138 and 171.124, CSNPD Officers were authorized to forcibly enter Zaic's residence as long as they were certain of her identity, announced themselves and their intentions, and informed her that she was under arrest. (Giddens Aff., attached as Ex. 7, ¶ 5)[7]

On June 8, 2012, Defendant Officers Giddens and Wall arrived at Zaic's home at approximately 8:30 a.m. to execute the Bench Warrant. (Dkt. #1, ¶ 27)  Defendants informed the LVMPD that CSNPD officers were on scene for this purpose. (Ex. 6)  Defendants observed Zaic come to the front door of the residence and later saw her step outside the residence to look up and down the street before returning inside.  At 11:00 a.m., Defendant Officers saw Zaic in the backyard.  Plaintiff made eye contact with Defendant Officer Wall.  Officer Wall was in his police uniform.  Officer Wall yelled, "Stop, Police" and "Stop, we have a warrant for your arrest."  Rather than comply, Plaintiff turned and ran back inside her house and shut the door. (Ex. 5, ¶ 6)  Defendant Officers then went to the front door of the residence, where they

---

[5] Defendants attach Timothy Wall's Affidavit to provide critical facts concerning Plaintiff's arrest which were omitted from the Complaint.

[6] Defendants request the Court take judicial notice of the "Not Found" Affidavit which is a public document filed with the Las Vegas Justice Court under the authority cited in FN 1.

[7] Defendants attach Michael Giddens's Affidavit to provide critical background information that the Defendant Officers received legal advice from the Clark County District Attorney's Office prior to making the arrest.

Office of General Counsel
College of Southern Nevada
6375 W. Charleston Ave., Sort Code W32E
Las Vegas, NV 89146

knocked loudly and announced that they were police with a warrant for her arrest. Defendant Officers ordered Plaintiff to open the door and warned her that if she did not comply, they would use force to enter the residence. (Ex. 5, ¶ 7) When Plaintiff still refused to follow the officers' commands, a CSNPD officer forced open the door and Defendants entered the residence. (Dkt. #1, ¶27) Despite Plaintiff's attempts to hide and resist arrest, Defendant Officers arrested her and she was transported to the Clark County Detention Center for processing. (Ex. 6, pg. 2)

## III. LEGAL STANDARDS

### a. Motion to Dismiss

Under Fed. R. Civ. P. 12(b)(6), a court may dismiss a Plaintiff's complaint for "failure to state a claim upon which relief can be granted." In considering whether a complaint states a claim upon which relief can be granted, all material allegations in the complaint are accepted as true and are construed in a light most favorable to the Plaintiff. Russell v. Landrieu, 621 F.2d 1037, 1039 (9th Cir. 1980). If a plaintiff will not be entitled to relief under any set of facts that would be proven under the allegations in the complaint, the court may dismiss the complaint or portions thereof. Halet v. Wend Inv. Co., 672 F.2d 1305, 1306 (9th Cir. 1982). The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint. Navarro v. Jury of Block, 250 F.3d 729, 732 (9th Cir. 2001). Such a review under Fed. R. Civ. P. 12(b)(6) is a ruling on a question of law. North Star Int'l v. Arizona Crop. Comm., 720 F.2d 578, 580 (9th Cir. 1983). However, the Court is not required to rely upon a Plaintiff's inaccurate statements of applicable law.

Generally, a court does not consider material beyond the pleadings when ruling on a Rule 12(b)(6) motion. However, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss without converting the motion into a motion for summary judgment." WMCV Phase 3, LLC v. Shushok & McCoy, Inc., et al., 750 F.Supp. 2d 1180, 1187 (Nev. 2010) (citing Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir. 1994)). Further under Fed. R. Evid. 201, the Court may take judicial notice of matters of public

record outside the pleadings without converting a motion to dismiss into a motion for summary judgment. Mack v. S. Bay Beer Distribs., Inc., 798 F.2d 1279, 1282 (9th Cir. 1986); MGIC Indem. Corp. v. Weisman, 803 F.2d 500, 504 (9th Cir. 1986).

### b. **Qualified Immunity**

The requirements for relief under 42 U.S.C. § 1983 are (1) a violation of rights protected by the U.S. Constitution or created by federal statute (2) proximately caused (3) by the conduct of a 'person' (4) acting under color of state law. Crumpton v. Gates, 947 F.2d 1418, 1420 (9th Cir. 1991). "Section 1983 does not create substantive rights; it merely serves as the procedural device for enforcing substantive provisions of the Constitution and federal statutes." Id.

Individuals sued for alleged violations of civil rights pursuant to § 1983 are entitled to request "qualified immunity." Qualified immunity is an affirmative defense that protects government officials and employees, such as police officers, from being sued in their individual capacities for actions within the scope of their discretionary authority taken while acting under color of state law. Harlow v. Fitzgerald, 457 U.S. 800, 816 (1982). Qualified immunity is "immunity from suit rather than a mere defense to liability." Mitchell v. Forsyth, 472. U.S. 511, 526 (1985). Accordingly, "where the defendant[s] seek qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive. Id., citing Saucier v. Katz, 533 U.S. 194, 200 (2001), Hunter v. Bryant, 502 U.S. 224, 227 (1991). Qualified immunity allows officials to act without fear of harassing litigation when they can reasonably anticipate what conduct may give rise to liability for damages and when unjustified lawsuits are quickly terminated." Davis v. Scherer, 468 U.S. 183, 195 (1984).

Courts should decide issues of qualified immunity as a matter of law when "historical facts are not in dispute, and the only disputes involve what inferences properly may be drawn from those historical facts." Conner v. Heiman, 672 F.3d 1126 (9th Cir. 2012). Government officials performing discretionary functions are "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Pearson v. Callahan, 555 U.S. 223 (2009),

Office of General Counsel
College of Southern Nevada
6375 W. Charleston Ave., Sort Code W32E
Las Vegas, NV 89146

Scherer 468 U.S. at 191.    There are two prongs to this analysis.  First, the court asks whether the facts show the official's conduct violated a constitutional right.  If the court finds no violation, the analysis ends and the officer is entitled to qualified immunity from suit.  Saucier, 533 U.S. at 201.  Under the second prong, the court must also ask whether the right that was violated was clearly established at the time of the incident.  Id. at 201-202.  However, courts need not address the two prongs sequentially.  If it is plain that a constitutional right is not clearly established, the court may grant qualified immunity without first ascertaining whether the specific facts depict a constitutional violation.  Pearson v. Callahan, 555 U.S. 223, 236-37 (2009)

Notably, even defendants who violate constitutional rights enjoy a qualified immunity that protects them from liability for damages unless it is further demonstrated that their conduct was unreasonable under the applicable standard.  Davis v. Scherer, 468 U.S. 183, 190 (1984).  Whether an official may prevail in his qualified immunity defense depends upon the "objective reasonableness of [his] conduct as measured by reference to clearly established law."  Id.  The question is *not* "whether another reasonable or more reasonable interpretation of the events can be constructed."  Hunter, at 227-228.  In short, qualified immunity shields law enforcement officers from suit under § 1983 if they could have reasonably believed their actions to be lawful, in light of the law clearly established at the time of their actions and with the information the officers possessed.  Anderson v. Creighton, 483 U.S. 635 (1987).   Qualified immunity may apply even if the defendant makes a mistake of law or acts based upon a mistake of fact.  See Pearson v. Callahan, 555 U.S. 223 (2009).

Courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  Pearson 553 U.S. at 226.  Where a defendant has invoked qualified immunity, it is the plaintiff that bears the burden of demonstrating that the right at issue was clearly established.  Alston v. Read, 663 F.3d 1094, 1098 (9th Cir. 2011).  The court should decide in favor of the officer if either of the prongs under the qualified immunity analysis favors the officer.  E.g. Mattos v. Agarano, 661 F.3d 433 (9th Cir. 2011).

The issue under the second prong – whether the federal rights asserted by a plaintiff were clearly established at the time of the alleged violation – presents a question of law. Mabe v. San Bernardino County Dept. of Social Services, 237 F.3d 1101, 1106-1107 (9th Cir. 2001). For the law to be clearly established under this prong, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand" that his conduct violates that right. Anderson v. Creighton, 483 U.S. 635, 640 (1987). In this regard, "the relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 202; Mattos, 661 F.3d at 448. Thus, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Mallye v. Briggs, 475 U.S. 335, 341 (1985).

## IV. LEGAL ARGUMENT

### a. Plaintiff's Complaint must be dismissed because she bases her claims on the wrong Nevada statute.

In considering a Rule 12(b)(6) motion to dismiss, the Court must accept allegations in the Complaint as true and construe them in the light most favorable to the Plaintiff. However, it is well-settled that a Court must discount inaccurate or mistaken statements of the law in considering a motion to dismiss. Here, Plaintiff cites Nev. Rev. Stat. 391.275 as the foundation for her claim that Defendant Officers violated her Constitutional rights by acting beyond their jurisdiction in executing the bench warrant for her arrest. The crux of Plaintiff's claims is that Defendant Officers had no jurisdiction "outside of school property" except in situations of "hot pursuit" and, therefore, had no authority to arrest Plaintiff at her home. (Dkt. #1, ¶¶28, 29) However, the cited statute pertains to jurisdictional limits of *school district* police officers only, and is wholly inapplicable to NSHE police officers. Nevada System of Higher Education police officers, including CSNPD Officers, are appointed pursuant to Nev. Rev. Stat. 396.325 and receive their jurisdictional authority from Nev. Rev. Stat. 289.350. Under the proper statutes,

the jurisdictional parameters for members of a CSNPD are broader than those allocated to school district police. The statute allows for additional authority and wider jurisdiction for CSNPD when there exists an interlocal agreement between a NSHE police department and other law enforcement agencies. Nev. Rev. Stat. 289.350(2). An interlocal agreement was in place between CSNPD and LVMPD at the time Defendant Officers arrested the Plaintiff. (Ex. 1)

Plaintiff has a duty to cite proper legal authorities for the claims in her Complaint. Yet neither Plaintiff nor her counsel performed the required legal inquiry to identify the correct Nevada statutes or discover the existing interlocal agreement prior to filing the Complaint. As an agreement by and between public agencies, the interlocal agreement between CSNPD and LVMPD is a public record which is available to the public. This public document applies directly to the jurisdiction of Defendant Officers to arrest Plaintiff, the very crux of her claims. Defendants request the Court take judicial notice of the proper statutory authority and corresponding interlocal agreement as governing Defendant Officer's jurisdiction, and discount Plaintiff's reliance on an improper statement of law in her Complaint.

Plaintiff's Complaint must be dismissed for her failure to state a claim for relief on proper legal authority, and her mistaken belief that Defendants acted outside their jurisdiction and authority when arresting her on the duly issued bench warrant. Alternatively, as discussed in more detail below, Defendant Officers had proper jurisdiction and authority to act when they arrested Plaintiff at her home and there was no violation of her 4th or 14th Amendment rights.

### b. There was no violation of Plaintiff's Constitutional Rights.

Under the analysis for applying qualified immunity to a § 1983 claim, the Court looks at two prongs, not in any required order: (1) whether a Constitutional violation occurred; and if so,

(2) whether Defendants' actions were objectively reasonable as measured by reference to clearly established law. Pearson, 555 U.S. at 236. Here, there was no violation of Plaintiff's 4th or 14th Amendment rights as she claims. However, even if the Court were to find a violation under the properly applied statutes, Defendant Officers are entitled to the defense of qualified immunity because they acted reasonably under the circumstances and in light of the established law.

Plaintiff claims Defendant Officers violated her Constitutional rights by acting outside their statutory jurisdiction and authority as improperly cited in Nev. Rev. Stat. 391.275. (Dkt. #1). She cites no additional facts in her Complaint to substantiate her allegations. Should the Court determine not to dismiss the Complaint for Plaintiff's reliance on inapplicable law, even an examination of Plaintiff's claims under the properly applied statutes provides no facts to support the allegation that Defendant Officers Giddens and Wall violated Plaintiff's 4th and 14th Amendment rights through unlawful arrest, forcible entry, destruction of property, and/or abuse.

Nev. Rev. Stat. 171.124 permits a peace officer to make an arrest in obedience to a warrant . . . "(e) when a warrant has in fact been issued in this State for the arrest of a named or described person for a public offense, and the officer has reasonable cause to believe that the person arrested is the person so named or described." Defendants were further permitted by statute to break open Plaintiff's door to execute the search warrant when she evaded arrest. This authority is conveyed by Nev. Rev. Stat. 171.138, which states in relevant part, "[t]o make an arrest . . . . a peace officer, may break open a door or window of the house, structure or other place of concealment in which the person to be arrested is, or in which there is reasonable grounds for believing the person to be, after having demanded admittance and explained the purpose for which admittance is desired."

Judge Lippis issued a bench warrant for Plaintiff's arrest on May 23, 2012, for violating the Court's Protective Order Against Harassment in the Workplace pursuant to Nev. Rev. Stat. Chapter 33.  (Ex. 2)  Provisions under Chapter 33 direct the court to transmit for service a copy of the order for protection to "the appropriate law enforcement agency <u>that has jurisdiction over the workplace</u> of the employer or the areas in which the employees of the employer perform their duties of employment." Nev. Rev. Stat. 33.300(1) (underlining added).  Subsection (2) also directs service by "the appropriate law enforcement agency" of the application, notice of hearing, and the order on the person who committed the harassment.  Nev. Rev. Stat. 33.300(2).  When Plaintiff violated the PO, the language contained in both Nev. Rev. Stat. 33.320 and in the Order itself gave CSNPD officers the authority to arrest the Plaintiff.  Under "Notice to Law Enforcement" the PO states:  "*Any* law enforcement officer, with or without a warrant, and whether or not a violation occurs in the presence of the officer, may arrest and take into custody the Adverse Party . . . ."  Also, "*Any law enforcement agency in Nevada* may enforce a Court Order issued pursuant to NRS 33.270 . . . ." (*emphasis added*)  The CSN Police Department was created for the primary purpose of providing public safety services and protection to the CSN community, including employees, staff, students, and visitors.  Under the plain language of the statutes and the Notice to Law Enforcement in the PO, Defendant Officers had proper authority to arrest Plaintiff pursuant to the bench warrant.  In addition, Defendants had authority under Nev. Rev. Stat. 289.350 and the interlocal agreement between CSNPD and LVMPD. Further, Defendant Officers coordinated with LVMPD Officer Cantu on June 7, 2012, prior to arresting the Plaintiff.

In addition to jurisdictional authority to arrest Plaintiff, Defendants' actions under the circumstances were extremely reasonable.  On several occasions on June 7 and 8, 2012,

Defendant Officers observed Plaintiff in and around her residence as they waited for an opportunity to execute the arrest warrant.  Despite Defendants' efforts, and those of the LVMPD Officers, Plaintiff successfully evaded service of the arrest warrant for several days.  On June 8, 2012, Defendants inquired of ADA Mitchell regarding their authority to break open Plaintiff's door to arrest her inside the residence.  Mitchell advised Defendants that they possessed such authority under Nev. Rev. Stat. sections 171.124 and 171.138 as described above.  Further, Defendants confirmed their location and intention to execute the warrant with LVMPD through dispatch prior to taking action.  This notice was based upon the Defendants' understanding of the requirements contained in the interlocal agreement between the two agencies.

On June 8, 2012, Plaintiff came outside of her residence and observed Defendant Officers.  Despite hearing their shouted commands of "Stop! Police!" and "We have a warrant for your arrest!" the Plaintiff fled from Defendant Officers and ran back into her residence and closed the doors, again attempting to avoid arrest.  She created an emergency situation by fleeing and hiding in her home.  Defendant Officers knocked loudly on her front door, announced that they were police officers with a warrant for her arrest, and warned her that if she did not let them in they would break thru the door.  These actions are in compliance with Nev. Rev. Stat. 171.124 and 171.138.  Despite these commands and warnings, Plaintiff still refused to cooperate. Defendant Officers then breached the front door.   They entered the residence and arrested the Plaintiff.  She was found hiding in the hall bathroom in a bathtub behind a shower curtain.  Although Plaintiff struggled with the officers trying to get away and flee again, they were able to handcuff her without further incident.  Plaintiff was then transported to the Clark County Detention Center for processing.

Plaintiff's Complaint alleges no facts to indicate Defendant Officers violated her Constitutional rights. Of critical importance to the insufficiency of her Complaint is Plaintiff's reliance on an inapplicable statute. Defendant Officers Giddens and Wall had authority under the correct statutes to arrest Zaic, and they went out of their way to ensure their actions did not violate Plaintiff's rights when making that arrest. First, Defendants acted with the authority of the lawfully issued arrest warrant from J. Lippis and Nev. Rev. Stat., Chapter 33. Second, the Officers acted pursuant to the specific authority of both Nev. Rev. Stat. 171.124 and 171.138 when entering her residence, as confirmed by ADA Mitchell. Further, Defendants acted in accordance with the proper statutes pertaining to jurisdiction and authority, and pursuant to the interlocal agreement between CSNPD and LVMPD. (Ex. 1, further discussed *infra.*)

Nothing in the chain of events resulting in Plaintiff's arrest indicates even the slightest violation of her rights. Under the first prong of the analysis, Defendant Officers are entitled to have the case dismissed pursuant to Saucier, 555 U.S. at 201. However, should the Court determine some violation occurred, Defendant Officers are still entitled to the defense of qualified immunity because they acted reasonably with no violation of a clearly established right or law. Scherer, 468 U.S. at 190.

> **c. Defendant Officers are entitled to Qualified Immunity, because there is no indication that the law failed to clearly establish that Defendants' actions would be unlawful when arresting Plaintiff under the circumstances presented in this case.**

In assessing a defense of qualified immunity, the Plaintiff must show that Defendants' conduct violated a constitutional right and that the right violated was clearly established. Inouye v. Kemna, 504 F.3d 705, 712 (9th Cir. 2007). For a right to be clearly established, it must be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. Saucier v. Katz, 533 U.S. 194 (2001) (quoting Anderson v. Creighton, 483 U.S.

13

635, 640 (1987)).  Such a right must be sufficiently clear "that every reasonable official would understand that what he is doing violates that right."  Reichle v. Howards, 2012 U.S. LEXIS 4132, 132 S. Ct. 2088, 2093 (2012).

The Defendants in this case are peace officers duly appointed to the CSN Police Department pursuant to Nev. Rev. Stat. 396.325.  This statute also grants CSN the authority to enter into interlocal agreements with other law enforcement agencies "to provide for the rendering of mutual aid."  In addition, Defendants derive authority and jurisdiction from Nev. Rev. Stat. 289.350, to exercise their peace officer duties:

> (a) On NSHE campuses;
> (b) When in hot pursuit of a violator leaving campus;
> (c) On or about other grounds or properties of NSHE; and
> (d) "Except as limited by subsection 2, in accordance with interlocal agreements entered into with other law enforcement agencies."

NRS 289.350(1)(a)-(d) (*emphasis added*).

Subsection (2) goes on to state that, "An interlocal agreement between the police department for the Nevada System of Higher Education and other law enforcement agencies may allow a peace officer of the police department of the Nevada System of Higher Education to exercise the officer's power or authority;

. . .

> (e) For mutual assistance specifically agreed upon with the other law enforcement agencies that are parties to the interlocal agreement."

Nev. Rev. Stat. 289.350(2)(d).

The Interlocal Cooperation Act found in Nev. Rev. Stat. Chapter 277 specifically grants authority for public agencies of the state to enter into agreements to jointly execute law enforcement duties.  Nev. R. Stat. 277.110(1).  Further, Nev. Rev. Stat. Chapter 33 and the

14

Extended Protective Order itself contain language reasonably interpreted as vesting authority in the Defendant Officers to arrest Plaintiff for violations of the PO.

When arresting the Plaintiff, Defendant Officers Giddens and Wall relied on applicable state statutes, the court's order, and the interlocal agreement between CSNPD and LVMPD as a reasonable basis to believe their actions were lawful.  The facts and authority relied upon were: (1) The Las Vegas Justice Court issued a bench warrant for Plaintiff's arrest; (2) Defendant Officers were authorized by state statutes to execute the warrant; (3) the Clark County Assistant District Attorney provided advice and statutory authority to forcibly enter Plaintiff's residence to arrest her; (4) the interlocal agreement between CSNPD and LVMPD provided for mutual assistance between police departments pursuant to Nev. Rev. Stat. Ch. 277, 289.350, and 396.325; and (5) the language of the PO and Nev. Rev. Stat. Ch. 33.  All of these authorities, statutes, legal advice, and coordination with LVMPD reasonably indicated to Defendant Officers that they had full authority to act when arresting Plaintiff.  They performed appropriately relying on their reasonable belief of the established law.

Defendant Officers were aware of the interlocal agreement and, therefore, coordinated with LVMPD officers when executing the arrest warrant.  After Plaintiff evaded arrest for several days, Defendants sought advice from the Clark County Assistant District Attorney.  ADA Mitchell advised them of the appropriate actions to take if Plaintiff continued to evade arrest and seclude herself inside the residence.  When Plaintiff saw the Officers from her back yard, Defendants correctly commanded her to stop and informed her they had a warrant for her arrest.  Yet, she fled back to the house and locked herself inside.  Defendant Officers knew Plaintiff's identity from previous interactions with her, they informed her of the reason they were there, they commanded she open the door and warned her they would enter forcibly if she

refused. Plaintiff failed to follow the Officers' commands, and they proceeded to enter the house to arrest her. Given the existing law and Plaintiff's attempts to flee and evade service, Defendant Officers acted reasonably with a solid basis to believe their conduct was lawful in the situation with which they were faced.

Under Anderson v. Creighton, 483 U.S. 635 (1987), when a defendant reasonably believes his actions were lawful in light of the situation with which he was confronted, qualified immunity should attach and Plaintiff's case should be dismissed

## V. **CONCLUSION**

Plaintiff's faulty reliance on the wrong statute as the basis for all of her claims requires the Court to dismiss her Complaint in its entirety. However, even if her Complaint stands and the proper legal authorities are applied, Defendant Officers are entitled to qualified immunity.

Whether an arm-chair quarterback's reflection on Defendants' actions could find fault is insufficient to preclude qualified immunity for Defendants. As the Court stated in Hunter, the standard is *not* whether there is another reasonable or more reasonable interpretation of events that can be constructed. Id. at 227-228. Rather, qualified immunity applies if the Defendants' conduct was objectively reasonable as measured by reference to clearly established law. Scherer. Given the circumstances here, Defendant Officers did not act unlawfully or unreasonably given the authority under which they arrested Plaintiff.

/ / / / /

/ / / / /

/ / / / /

/ / / / /

/ / / / /

Therefore, qualified immunity should apply to both Defendant Officers, and Plaintiff's case must be dismissed entirely and with prejudice.

Respectfully submitted this ___ day of October, 2014.

        /s/ Diane L. Welch
DIANE L. WELCH, ESQ.
Assistant General Counsel
College of Southern Nevada
6375 W. Charleston Blvd. (W32E)
Las Vegas, Nevada 89146
(702) 651-7325
*Counsel for Defendants*

# CERTIFICATE OF SERVICE

I hereby certify that I am an employee in the Office of General Counsel for the College of Southern Nevada, located at 6375 W. Charleston Blvd. (W32E), Las Vegas, Nevada 89146, I am over the age of 18 years, and I am not a party to the within cause. I further certify that on October _30_ 2014, I electronically transmitted the attached **MOTION TO DISMISS** to the U.S. District Court, District of Nevada, Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all counsel in this matter, all counsel being registered to receive Electronic Filing, as follows:

Lawrence J. Semenza, Esq.
3753 Howard Hughes Pkwy, Suite 200
Las Vegas, NV 89169
*Attorney for Plaintiff*

Lawrence Semenza, Esq.:     lsemenza@semenzalawfirm.com


**BY MAIL**     I caused such envelope(s) with First class postage thereon fully prepaid to be placed in the U.S. Mail in Las Vegas, Nevada.

_X___ **BY ELECTRONIC SERVICE**


       /s/ Diane L. Welch
An employee of the Office of General Counsel
College of Southern Nevada, Las Vegas